[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10350

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROBERT FIKE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00333-KKM-CPT-1

_____

Before WILSON, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

After serving a time-served sentence for sending obscene materials to a 13-year-old girl, Robert Fike began a three-year term of supervised release. About six months into that term, Fike violated his release conditions three times by using illegal drugs and being discharged from his residential reentry center. The district court revoked Fike's supervised release and sentenced him to ten months' imprisonment. Fike appeals, arguing that the district court plainly erred by imposing his prison sentence for rehabilitative purposes in violation of 18 U.S.C. § 3852(a), *Tapia v. United States*, 564 U.S. 319 (2011), and *United States v. Vandergrift*, 754 F.3d 1303 (11th Cir. 2014). We disagree and affirm.

**I.**

In 2019, Robert Fike, a 48-year-old Florida resident, sent ten packages of obscene materials to a 13-year-old girl in Pennsylvania. Fike did not know the minor victim personally—he discovered her on "a[n] . . . online . . . channel known for featuring wholesome family content." The victim's minor status is a "prominent feature" of the channel.

The packages Fike sent the minor contained the following items: girls' clothing (socks and leggings) visibly marked with Fike's semen, sexually explicit letters addressed to the victim, and children's toys. After discovering online that the child's family was

planning a trip to Disney World, Fike wrote to the child that he was planning to travel to Disney to see her. Government agents also discovered unsent packages of obscene materials addressed to the minor at Fike's residence, including letters that explicitly referenced the victim's age.

A grand jury charged Fike with eight counts of transferring obscene materials to a minor, in violation of 18 U.S.C. § 1470, and one count of stalking, in violation of 18 U.S.C. § 2261A(2)(B). But Fike entered a plea agreement with the government in which he pleaded guilty to only two counts of transferring obscene materials to a minor, and the government dismissed the remaining counts against him. On April 5, 2022, the district court sentenced Fike to time served followed by three years of supervised release. As a special condition of his supervised release, Fike was required to spend the first 360 days of his term at a residential reentry center in Tampa, with the first 180 days on home incarceration and the next 180 days on home detention.

Fike's presentence investigation report explained that Fike suffers from a "delusional disorder" about his minor victim. According to his diagnostic report, "[t]he central theme" of Fike's ongoing condition "is that another person is in love with the [him,] with efforts to contact the object of the delusion being common." The report further explained that, although "the addition of psychiatric medication" has led to either "a decrease in [Fike's] fixation" on his delusions about his minor victim "or an ability to suppress discussion of them," Fike nonetheless "continue[s] to endorse

the belief that some of [his delusions] [are] real." The evaluator further cautioned that the use of "illicit substances, including cannabis, may . . . exacerbate the symptoms of his delusional disorder."

Less than seven months after Fike began his term of supervised release, the probation office filed a petition charging Fike with three violations of his conditions of supervised release—using and possessing marijuana on two occasions and being unsuccessfully discharged from his residential reentry center because of illegal drug use. In a discharge report prepared by the reentry center, a BOP staff member who had supervised Fike opined that she "do[es] not believe [Fike] will be successful upon release" because he will "not accept[] responsibility for his actions" and "[h]e continues to talk about his case and how he is still interested in having a consensual relationship with his [minor] victim."

The probation office's filings corroborate the concerns raised in Fike's discharge report. In its sentencing recommendation, the office maintained that "Fike's prognosis to succeed on supervision is poor" because, "[a]lthough he was taking medicine" for his "significant mental health needs" while on supervised release, "Fike's delusions regarding his romantic relationship with the teenage victim persisted." Specifically, Fike "continued to believe [he and the minor victim] were in a relationship[] and that he had the consent of [the minor's] parents and attorneys to be in a relationship with her." And Fike "often mentioned that he still wanted to start a family with the minor victim." Accordingly, the office recommended the district court revoke Fike's supervised release and

sentence him to 10 months' imprisonment, noting as its "primar[]y concern[]" the safety of "the victim in this case."

The district court held two revocation hearings. First, Judge Barber—who was temporarily covering the case for the assigned judge—held an initial revocation hearing in January 2023. During the initial hearing, the government asked Judge Barber to revoke Fike's term of supervised release and sentence him to four months' imprisonment. But Judge Barber decided not to sentence Fike during this hearing, believing it made more sense to transfer the case back to the assigned judge for sentencing. Before adjourning, however, Judge Barber recounted the facts of Fike's underlying crimes and said "there's no way in the world" that he would sentence Fike to only "four months[']" imprisonment. In Judge Barber's opinion, "there's only one possible outcome, and that's the absolute maximum sentence available under the law to protect the public from [Fike's] activities." Judge Barber reiterated that Fike's ultimate sentence would be up to the assigned judge upon transfer, but he "just c[ould not] see any other possible outcome in light of" Fike's record. The statutory maximum penalty for Fike's Class C violations is two years' imprisonment followed by three years of supervised release. *See* 18 U.S.C. § 3583(g), (h).

Judge Barber then transferred the case back to the assigned judge, who held a final revocation hearing a week later. During the hearing, Fike admitted to all three violations of his supervised release conditions, and the district court calculated a sentencing

guideline range of four to ten months' imprisonment. *See* U.S. Sent'g Guidelines Manual § 7B1.4(a) (U.S. Sent'g Comm'n 2021).

The district court then heard argument from counsel. Counsel for the government stated that the government had reached an agreement with the defense to request a sentence of four months' imprisonment with no supervised release to follow. The government explained that "the reason" it and the probation office both requested "no supervised release to follow" is because "[t]here's simply too many mental health . . . [and] other associated issues" Fike must overcome "to have a successful residential reentry center treatment" and "get back on his feet."

The sentencing judge "agree[d]" that Fike would likely not "be successful on any further supervised release," but she was "concerned" that four months' imprisonment was "insufficient, particularly with [Fike's] mental health issues and [because] . . . it appears he still has delusions about a relationship with the minor victim." The judge thus asked the government whether it had any "additional facts with regards to . . . [the judge's] concern with the minor victim." Counsel responded that, if the district court revoked Fike's supervised release, Fike would "ha[ve] to go through all the proper registrations and monitoring." The court asked, "Would that keep him from sending obscene materials to the victim in Pennsylvania?" The government responded, "I have no idea."

The district court then heard argument from defense counsel, who asked the court to impose a sentence of time served followed by one year of supervised release. To support its argument

against imprisonment and in favor of supervised release, defense counsel focused on Fike's own apparent necessities—that Fike "need[s] significant mental health treatment," needs "a place to live," "needs services," "needs help getting his disability forms filled out so that he has some income," "needs help getting his medication," and "needs . . . supervision." Counsel asserted that Fike is experiencing "trauma" from being treated unfairly in this case and argued that Fike "doesn't need further incarceration for that[;] he needs mental health treatment, a safe place where he can talk about what happened to him." The defense conceded that Fike "occasionally . . . talks about the underlying crime because of his mental health diagnosis" for which "there is no cure," but assured the court that "when he's . . . taking his medication[,] . . . he's not talking about it as much."

The district court then probed defense counsel and Fike's probation officer about whether Fike was consistent in taking his medication while on supervised release. Both confirmed that he was. The judge then asked the probation officer to address the court's "concern[]" that Fike's delusions regarding the minor victim were "still persisting" despite being "on medication and under supervision." The probation officer affirmed the court's concern, noting that Fike still "talk[ed] . . . openly . . . about . . . fantasies that he had with the young . . . girl" and about his "belie[f] that he had consent to be with that girl" while on medicated supervision. The judge continued examining these concerns at length, asking the probation officer whether Fike "ma[d]e comments about continuing to reach out to the victim"; whether he "sa[id] anything about

his desire to still have a relationship with her"; and whether "there is any . . . need to protect the victim" from Fike. The probation officer responded that she thinks Fike "wants to start a family" with the victim, but that she "can't predict if he's gonna repeat [his] behavior."

Finally, the sentencing judge asked the probation officer why the office was recommending no additional supervised release—specifically, whether that recommendation "is based on [Fike's] mental health issues making him not as amenable to supervision." The probation officer explained that the primary reason for this recommendation is that Fike's lack of support system increases the risk that he will be unable to secure housing, transportation, employment, mental health services, and medication upon release. But defense counsel disagreed with the recommendation, arguing that a new term of supervised release is necessary because Fike "need[s] Probation's help . . . [and] resources" to secure housing.

Lastly, the court allowed Fike to make a statement. Fike began by suggesting that others had "set him up" and "were responsible" for his crimes. "I know it sounds crazy," Fike said, "but no one has seen it from my point of view." Fike then explained that he "need[s] help" from the probation office "to get back on [his] feet" so that he can become "a father."

The court proceeded to sentencing. The sentencing judge explained that she had considered the nature and circumstances of the offense, Fike's history and characteristics, the need for adequate deterrence and protection of the public, the guideline range,

counsel's argument, and Fike's statement. In particular, she stressed "[t]he need for adequate deterrence and the protection of the public," reiterating her "concern[] about . . . [Fike's] potential contact with the victim of the underlying offense" and noting that "it . . . seem[s] that [Fike] still ha[s] some . . . lingering frustrations perhaps as to how [his] prosecution proceeded and whether [he] w[as] wrongfully convicted or set up."

Accordingly, the district court revoked Fike's term of supervised release and sentenced him to 10 months' imprisonment with no new term of supervised release to follow. Fike timely appealed his sentence.

## II.

If a criminal defendant violates the conditions of his supervised release by committing a Class C drug offense, the district court is required to "revoke the term of supervised release and" impose "a term of imprisonment not to exceed" two years. 18 U.S.C. § 3583(g), (e)(3). In addition, the district court "may" impose a new "term of supervised release after imprisonment." *Id.* § 3583(h).

In determining the term and conditions of any supervised release, the district court must "consider the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.* § 3583(c). Those factors include the need for the sentence to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed . . . medical care." 18

U.S.C. § 3553(a). But the law expressly provides that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3852(a). Accordingly, a district court may not "impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Tapia v. United States*, 564 U.S. 319, 335 (2011). *See also United States v. Vandergrift*, 754 F.3d 1303 (11th Cir. 2014).

According to Fike, the sentencing judge improperly imposed a prison term because of his rehabilitative needs. Specifically, he argues that the court sentenced him to prison because he needed medication and mental health treatment. We disagree.

Because Fike raises this argument for the first time on appeal, we review his sentence only for plain error. *Vandergrift*, 754 F.3d at 1307. Under this standard, Fike must show that: (1) an error occurred, (2) the error was plain, and (3) the error affected his substantial rights. *Id.* But even if Fike makes this showing, the decision to correct the error is within our discretion, which we will "not exercise . . . unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Monroe*, 353 F.3d 1346, 1356–57 (11th Cir. 2003) (cleaned up).

Fike has not met this rigorous standard because the sentencing judge did not sentence Fike to a term of imprisonment so that he could receive rehabilitative services. The law does not prohibit a district court from merely "*discussing* rehabilitation during a sentencing hearing." *Vandergrift*, 754 F.3d at 1311 (emphasis added); *accord Tapia*, 564 U.S. at 334. In particular, "[s]entencing courts are

permitted to consider a defendant's rehabilitative needs when imposing sentences of . . . supervised release." *United States v. Alberts*, 859 F.3d 979, 986 n.3 (11th Cir. 2017) (citing *Tapia*, 564 U.S. at 330).

Although the sentencing judge inquired about Fike's mental condition and medication during the final revocation hearing, the context of those statements makes plain that the judge never considered whether *imprisonment* would promote Fike's *rehabilitation*. No one suggested at the hearing that imprisonment would assist Fike's rehabilitation. *Cf. Vandergrift*, 754 F.3d at 1311–12 ("[I]n the course of making th[e defendant's] prison term 24 months long, the district court stated that it needed 'to consider what's best for the defendant' and that 'the sentence [was] being imposed . . . for the benefit of the defendant.'"); *Tapia*, 564 U.S. at 334 (district court stated the "number one" consideration in crafting its prison sentence was ensuring the defendant "serve a prison term long enough to qualify and complete" the BOP's "500 Hour Drug Program"). The defense counsel referenced Fike's personal needs only when arguing *against imprisonment* or *in favor of supervised release*. Likewise, the judge invoked these topics only when considering (1) whether to impose a new term of *supervised release* and (2) the risk that Fike would *inflict further harm on the victim* if released. Neither consideration is improper.

Fike has also not met his burden of establishing that any supposed error affected his substantial rights. For an error to affect substantial rights, the defendant must show that the error probably affected the outcome of the district court's proceedings. *See United*

*States v. Innocent*, 977 F.3d 1077, 1082 (11th Cir. 2020). We've held that a defendant cannot show that an error of this type affected his substantial rights if "the sentencing transcript shows that rehabilitation was merely an ancillary concern" in the court's sentencing decision. *Alberts*, 859 F.3d at 986; *see also Vandergrift*, 754 F.3d at 1312 (substantial rights not impacted where "rehabilitative needs clearly constituted only a minor fragment of the court's reasoning" (quoting *United States v. Bennett*, 698 F.3d 194, 201 (4th Cir. 2012))). And here, the bulk of the sentencing court's inquiries during the revocation hearing pertained to the victim's safety. *Cf. Vandergrift*, 754 F.3d at 1312 (holding "[t]he court's primary considerations were for the safety of the public and deterring others from similar conduct" where "the court emphasized its concern that [the defendant] continued to possess photographs that he had taken of young boys about whom he had sexually fantasized"). And as explained, to the extent any of the court's imprisonment-related statements pertained to Fike's rehabilitation, that concern was plainly "ancillary" to the court's "primary" concern for public safety.

Moreover, the record and applicable law belie any suggestion that Fike "would have been given a lesser sentence" had the assigned judge not considered his rehabilitative needs. *Taylor*, 417 F.3d at 1183. For starters, the sentencing judge was required to impose *some* "term of imprisonment" here because Fike violated his supervised release by possessing a controlled substance. *See* 18 U.S.C. § 3583(g) ("If the defendant . . . possesses a controlled substance in violation of the condition set forth in subsection (d)[,] . . .

the court shall . . . require the defendant to serve a term of imprisonment . . . .").

Fike cannot establish that his term of imprisonment would have been shorter absent any improper consideration of rehabilitation. To the contrary, Judge Barber stated that he would have imposed a term of imprisonment over twice as long as that imposed by the assigned judge, which Judge Barber believed was necessary to "protect the public from [Fike's] activities." Both judges expressed a significant concern for the victim's safety, and the record amply supports that concern. The probation office's presentence investigation report and sentencing memoranda, the reentry center's discharge report, and counsel's and Fike's statements during the revocation hearing each highlight Fike's continued infatuation with the minor victim and his unwillingness to accept the illegality of his conduct.

## III.

The district court is **AFFIRMED**.